IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DARRYL MANN                                                                                                  PLAINTIFF

v.                                                                          CIVIL ACTION NO.: 1:13-cv-491-MTP

RONALD KING, ET AL.                                                                            DEFENDANTS

**OPINION AND ORDER**

THIS MATTER is before the Court on the Motion for Summary Judgment [27] filed by Defendant Ronald King and the Motion for Summary Judgment [29] filed by Defendants Dr. Ron Woodall and Dr. Glenn Hendrix.  Having considered the submissions of the parties and the applicable law, the Court finds that the Defendants' Motions for Summary Judgment [27] [29] should be granted.

**FACTUAL BACKGROUND**

On June 12, 2012, Plaintiff Darryl Mann, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983.  Through his Complaint, and as clarified during his *Spears*[1] hearing, Plaintiff asserts claims against Defendants King, Dr. Woodall, and Dr. Hendrix for the denial and/or delay of adequate medical treatment.  Specifically, Plaintiff alleges that Defendants delayed and/or denied him medical treatment relating to his dentures, oral surgery, medications, and diet.  The allegations in Plaintiff Complaint occurred while he was a post-conviction inmate at South Mississippi Correctional Institution ("SMCI").  Plaintiff is currently incarcerated at SMCI after having been convicted of two counts of sexual battery and

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).  Plaintiff's *Spears* hearing took place on April 23, 2013.

1

one count of fondling.[2]

Plaintiff seeks monetary damages and injunctive relief for the alleged violations of his constitutional rights. On August 15, 2013, Defendants filed their Motions for Summary Judgment [27] [29].

## STANDARD FOR SUMMARY JUDGMENT

This Court may grant summary judgment only if, viewing the facts in a light most favorable to Plaintiff, the Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id* at 712.

There, however, must be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations,"[3] unsubstantiated assertions,[4] or the presence of a "scintilla of evidence,"[5] is not enough to create a real controversy regarding material facts. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an

---

[2] *See* http://www.mdoc.state.ms.us/InmateDetails.asp?PassedId=109423 (last visited February 28, 2014).

[3] *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990)

[4] *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994)

[5] *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)

otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

## ANALYSIS

Plaintiff's claims are before the Court pursuant to 42 U.S.C. § 1983. Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'right, privileges, or immunities secured by the Constitution and laws' of the United States." *Id*. (quoting 42 U.S.C. § 1983). Accordingly, Plaintiff must demonstrate a genuine issue of material fact as to the following two elements: (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) the deprivation was caused by a person acting under color of state law.

Regarding the state-actor element, Defendants include the superintendent of SMCI (King), a medical doctor who provides healthcare to inmates at SMCI (Dr. Woodall), and a dentist who provides dental care to inmates at SMCI (Dr. Hendrix). The Supreme Court has explicitly held that Section 1983 liability applies to doctors who are not formally employed by a state, but who instead provide medical care to prisoners as government contractors. *West v. Atkins*, 487 U.S. 42, 49-57 (1988); *Bishop v. Karney*, 408 Fed. App'x. 846, 848 (5th Cir. 2011). In other words, the state-action requirement of Section 1983 may be satisfied when private

doctors serve inmate populations.

Turning to the element of a constitutional deprivation, it is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability.") (citations omitted). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom, or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

***Denial of Adequate Medical Care***

Plaintiff alleges claims against the Defendants for the denial and/or delay of adequate medical treatment in violation of the Eighth Amendment. Plaintiff asserts that his current set of dentures do not fit properly, that he needs oral surgery, and that Dr. Hendrix and Dr. Woodall have failed to provide the surgery. Plaintiff also claims that Dr. Woodall wrongfully discontinued his medications and prescribed medication to which Plaintiff was allergic. Plaintiff claims that Defendant King, as superintendent, made the final decision to deny him adequate dental and medical care.

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. App'x 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A prison official may not be held liable under this standard pursuant to Section 1983 unless the inmate alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Id.* at 838. Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical

needs." *Davidson*, 91 Fed. App'x at 965 (quoting *Domino*, 239 F.3d at 756). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). The Plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

    A.    <u>Dental Care</u>

Plaintiff claims that Dr. Hendrix and Dr. Woodall denied him adequate dental care. The record reflects that Plaintiff received regular treatment for his dental issues. Plaintiff first received dentures after his teeth were pulled while he was incarcerated at the Mississippi State Penitentiary in Parchman. (MSJ [29] Ex. B: Transcript of *Spears* Hearing at 10-12; Ex. C: Medical Records at 3, 21.) Plaintiff was transferred to SMCI in June of 2011. On August 8, 2011, Dr. Hendrix examined Plaintiff after he submitted a request for new dentures. (MSJ [29] Ex. C at 121-22.) Dr. Hendrix fitted Plaintiff for dentures and advised him that the fit would be poor. (MSJ [29] Ex. C at 128-29.) Plaintiff's new dentures were delivered on October 6, 2011. (MSJ [29] Ex. C at 132.) Dr. Hendrix conducted follow-up examinations of Plaintiff on November 2 and November 7, 2011. (MSJ [29] Ex. C at 160-62.) After Dr. Hendrix made a realignment, he commented that the "[r]etention still poor (little ridge) but now stable." (MSJ

[29] Ex. C at 162.)

Five months later, in April, 2012, Plaintiff complained of difficulty chewing his food. (MSJ [29] Ex. C at 204-06.)  Dr. Hendrix placed Plaintiff on a soft diet.[6] (MSJ [29] Ex. C at 204-06.)  The soft diet was renewed in October, 2012. (MSJ [29] Ex. C at 236.)  On January 15, 2013, Dr. Hendrix again examined Plaintiff and did not note any problems. (MSJ [29] Ex. C at 415.)

 In their Motion [29] and Supporting Memorandum [30], Defendants Dr. Hendrix and Dr. Woodall argue that Plaintiff has failed to establish they were deliberately indifferent to his medical needs, and thus, they are entitled to judgment as a matter of law.  In support of their Motion, Dr. Hendrix and Dr. Woodall each submitted an affidavit, along with a transcript of the *Spears* hearing, Plaintiff's medical records, and Plaintiff's Complaint. (MSJ [29] Exs. A-E.)

In order to succeed on his claims, Plaintiff must demonstrate that Defendants were deliberately indifferent to his serious medical needs. *See Davidson*, 91 Fed. App'x at 964. Plaintiff has failed to make this showing.  Based on the evidence before the Court, neither Dr. Hendrix nor Dr. Woodall ever refused to treat Plaintiff, ignored his complaints, or denied him medical treatment.  Defendants provided Plaintiff dentures, adjusted them so they would fit more properly, and provided him a mechanical diet.

Plaintiff's chief complaint is that Dr. Hendrix and Dr. Woodall refused to authorize or provide oral surgery.  According to Dr. Hendrix, the bone structure of Plaintiff's mouth and jaw make it difficult to provide him with dentures that fit properly.  Dr. Hendrix states that extensive oral surgery *might* make Plaintiff's dentures fit properly.  He also states that Plaintiff has been

---

[6] The medical records refer to Plaintiff's soft diet as a "mechanical diet."

7

provided a mechanical diet which allows him to eat and receive adequate nutrition. He states that, in his professional opinion, the mechanical diet is a reasonable alternative and extensive oral surgery is not a serious medical need. (MSJ[29] Ex. D.) Dr. Woodall agrees that Plaintiff does not need oral surgery. (MSJ [29] Ex. E.)

Plaintiff's claim amounts to a disagreement over the course of treatment. However, "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton*, 122 F.3d at 292. Defendants' conduct regarding oral surgery does not rise to the level of a constitutional violation.

Plaintiff also claims that Dr. Hendrix and Dr. Woodall failed to provide him a soft diet and as a result he continuously lost weight. The sworn testimony of Dr. Hendrix and Dr. Woodall and the medical records do not support Plaintiff's claim. The medical records demonstrate that Plaintiff was provided a soft diet. (MSJ [29] Ex. C at 204-06, 236.) The medical records also demonstrate that Plaintiff did not continuously lose weight. Plaintiff's weight fluctuated, but the most recent medical records (April, 2013) show that Plaintiff weighed the same as he did when he arrived at SMCI in June of 2011. (MSJ [29] Ex. C at 102, 485.) Accordingly, the medical history of Plaintiff's weight while incarcerated at SMCI does not support his claim that he has not received adequate nutrition.

Based on the foregoing, Plaintiff has failed to create a genuine issue of material fact as to whether Dr. Hendrix and Dr. Woodall were deliberately indifferent to his serious medical needs. Dr. Hendrix and Dr. Woodall are entitled to judgment as a matter of law regarding Plaintiff's dental care.

B.   Medications

Plaintiff claims that Dr. Woodall denied him adequate medical care relating to his medications. After Plaintiff was transferred to SMCI in June of 2011, he was examined by Dr. Woodall. At that time, Dr. Woodall ordered lab work and updated Plaintiff's medications. (MSJ [29] Ex. C at 110-11.) Plaintiff's medications included Atenolol, clonidine, and hydrochlorothiazide for high blood pressure. (MSJ [29] Ex. C at 110.) Plaintiff was also prescribed aspirin. (MSJ [29] Ex. C at 110.) On November 17, 2011, during a cardiovascular assessment, Plaintiff reported that he stopped taking Atenolol because he "had a reaction to it." (MSJ [29] Ex. C at 165.) Therefore, Plaintiff's Atenolol prescription was discontinued. (MSJ [29] Ex. C at 167.)

On December 13, 2011, Plaintiff reported that he had not taken his medications because someone had spilled fluids on them. (MSJ [29] Ex. C at 170). Plaintiff's blood pressure was 166/96. (MSJ [29] Ex. C at 170.) Dr. Woodall ordered a refill of Plaintiff's medications which were administered to Plaintiff. (MSJ [29] Ex. C at 170-71.) Later that day, a follow-up exam revealed that his blood pressure had dropped to 121/84. (MSJ [29] Ex. C at 171.) On December 15, 2011, Plaintiff was examined after he complained of a headache. (MSJ [29] Ex. C at 172-73.) Plaintiff reported that he had not taken his medications in three days. (MSJ [29] Ex. C at 172.)

On January 7 and January 10, 2012, Plaintiff was examined regarding his blood pressure. (MSJ [29] Ex. C at 176-78.) Plaintiff believed that his allergies were causing his blood pressure to rise. (MSJ [29] Ex. C at 178.) Plaintiff was provided an antihistamine for allergies. (MSJ [29] Ex. C at 178.) On February 8, 2012, Dr. Woodall performed a cardiovascular assessment of Plaintiff and found that his hypertension was stable. (MSJ [29] Ex. C at 183-87.) On November

2, 2012, Norvasc was added to Plaintiff's blood pressure medications. (MSJ [29] Ex. C at 382.) On November 21, 2012, Vasotec and Atenolol were added to his blood pressure medications. Later that day, however, the Atenolol prescription was discontinued and added to his allergies list. (MSJ [29] Ex. C at 392-94.) Throughout Plaintiff's treatment, he had issues with medication compliance. The medical records demonstrate that Plaintiff was occasionally uncooperative.[7]

In order to succeed on his claims, Plaintiff must demonstrate that Dr. Woodall was deliberately indifferent to Plaintiff's serious medical needs. *See Davidson*, 91 Fed. App'x at 964. Plaintiff has not met this burden. Plaintiff has failed to come forward with evidence that he was exposed to a "substantial risk of serious harm" and Dr. Woodall was aware of such risk and disregarded it. *See Farmer*, 511 U.S. at 838. Based on the evidence before the Court, Dr. Woodall nor any other medical professional ever refused to treat Plaintiff, ignored his complaints, or denied him medical treatment. *Domino*, 239 F.3d at 756. To the contrary, Plaintiff was provided access to medical professionals, including Dr. Woodall. The medical professionals assessed Plaintiff's condition and consistently treated his conditions. Plaintiff's blood pressure was regularly monitored, and he was provided multiple medications to treat his high blood pressure. In addition to treatment for high blood pressure, Plaintiff also received treatment for hepatitis, pain in his arm and shoulder, colds, allergies, scratches, and other ailments. (MSJ [29] Ex. C at 103, 127, 130, 147, 195, 200, 216-17, 220-22, and 416-17.) The

---

[7] For example, in January, 2013, Plaintiff was informed that he would need to come to the pharmacy each morning to receive his medications so that medical professionals could observe him taking his medications. Plaintiff responded by stating that "I ain't gone go through all that crap." (MSJ [29] Ex. C at 420.) The next month, Plaintiff again refused to take his medications and stated that he was "over his high blood pressure." (MSJ [29] Ex. C at 435.) Plaintiff even refused to have his blood pressure checked. (MSJ [29] Ex. C at 463.)

record does not support a finding of deliberate indifference.[8]

    C.    <u>Defendant Ronald King</u>

Plaintiff claims that Defendant King, as supervisor, made the final decision authorizing the denial of his adequate dental and medical care. Plaintiff, however, has failed to show that King was deliberately indifferent to his serious medical condition. *See Davidson*, 91 Fed. App'x at 964. As previously mentioned, there is no supervisory or respondeat superior liability under Section 1983. *See Oliver*, 276 F.3d at 742 & n. 6. Accordingly, King cannot be held responsible for the alleged denial of adequate dental and medical treatment of Dr. Woodall and Dr. Hendrix. *See Thompkins*, 828 F.2d at 304 ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability.").

Plaintiff has failed to demonstrate that Defendant King was personally involved in the alleged denial of adequate medical treatment, or that he implemented an unconstitutional policy that causally resulted in an injury to Plaintiff. Moreover, the Court has determined that neither Dr. Woodall nor Dr. Hendrix violated Plaintiff's constitutional rights. Therefore, Plaintiff has failed to establish a constitutional violation by King.

Although King raised the defense of qualified immunity, "if it becomes evident that the plaintiff has failed to state or otherwise establish a claim, then the defendant is entitled to dismissal on that basis." *Well v. Bonner*, 45 F.3d 90,93 (5th Cir. 1993) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)); *see also Sappington v. Bartee*, 195 F.3d 234, 236 (5th Cir. 1999). Because the Court finds that the Plaintiff's claims are not cognizable as constitutional claims, it

---

[8] Even if Dr. Woodall were negligent in his treatment of Plaintiff, such does not rise to the level of a constitutional violation. *See Daniels*, 474 U.S. at 333-34; *McMahon*, 583 F.2d at 174; *Davidson*, 91 Fed. App'x at 965 (citing *Stewart*, 174 F.3d at 534).

need not address the issue of whether the Defendants are entitled to qualified immunity.

Based on the foregoing, Plaintiff has failed to create a genuine issue of material fact as the whether Defendants were deliberately indifferent to his serious medical needs. Defendants are entitled to judgment as a mater of law.

## CONCLUSION

For the reasons stated above, the Court finds that Defendants' Motions for Summary Judgement [27] [29] should be granted. Accordingly,

IT IS, THEREFORE, ORDERED that:

1. Defendant King's Motion for Summary Judgment [27] is GRANTED,

2. Defendants Dr. Woodall and Dr. Hendrix's Motion for Summary Judgment [29] is GRANTED,

3. This action is dismissed with prejudice, and

4. A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED this the 28th day of February, 2014.

s/ Michael T. Parker
United States Magistrate Judge